Good morning, Your Honors. Rebecca Peterson on behalf of plaintiffs. I would like to reserve four minutes for rebuttal, please. And thank you for the opportunity for the argument. This case presents a great opportunity and perhaps necessary opportunity for the California Supreme Court of California to clarify what exactly is the proper legal standard to apply to deception by omission claims under the UCL and CLRA. Can I ask you, they just refused to do it three months ago, and then they also refused in what, 21 and 22? If they didn't do it three months ago, right before Christmas, like December 23rd, 2024 is their capito decision. What makes you think they'll do it now? So I think in capito it wasn't the same question before the court. In fact, the California Attorney General's brief there does mention Hodson, but only in the background where he's explaining the various standards that do apply. So the exact question that we have asked this court to certify was not the question that was posed in capito. And I believe in capito pure omissions were not as central. There was a question as to when there's a statutory duty to disclose, and I think it's maybe the patient's bill. They didn't even want to decide threshold questions. They didn't even want to decide whether a failure to disclose can trigger CLRA liability. Yeah. Can I ask you on capito? Sure. How should we read this? Like you said, they don't mention Wilson or Hodson. They don't mention unreasonable safety hazard or central function test. Do those no longer apply in omission-based CLRA and UCL claims? Is it just the Lemandry factors? What's your sense?  I would say if, based on capito, that because they don't even have that initial inquiry as to the Hodson factors of central function and safety risk, that the California courts do not consider that. Because out of this circuit, it appears that has been followed as the prerequisite in what the district court did below, that we had to first satisfy the Hodson factors. So I do agree, Your Honor, that reading the capito case, it seems like that is just not applicable for California because the California Supreme Court did not do that inquiry first before even getting into whether the Lemandry factors are likely to deceive applied. Ms. Peterson, on the certification factor, plaintiffs brought their case in federal court, right? They chose a federal forum rather than a state forum? Correct. This one we were not removed, and that's because of CAFCA, and it would have satisfied the CAFCA. And so this did not start in state court. You are correct. So to move on to the Lemandry point, do you agree then that if none of the Lemandry factors are present, at least under the law as it stands, that's dispositive? Well, Your Honor, I do believe that the UCL fraud claim, and Hodson even says this, is likely to deceive. And so I do think Lemandry doesn't apply to the UCL claim, the fraud claim even, not just unlawful or unfair. And if you do look at Hodson in their holding, it says specifically, and since then, I agree that courts have applied the Hodson factors to the UCL, but it specifically says on page 865, under the fraudulent prong, it says a failure to disclose. Okay, wait, I want to, you said that you don't think Lemandry applies to UCL claims, but in Capito, the California Supreme Court relied on the same analysis in the CLRA claim, where they did seem to at least discuss two of the Lemandry factors for its ruling on the UCL claim. So how would that follow, that Lemandry doesn't matter for UCL if the California Supreme Court relied on active concealment and exclusive knowledge, which are Lemandry factors, for the CLRA claim? I believe that was because of what was presented as the argument there. But I do believe that, and the California Attorney General's amicus brief does go into great detail about how it's likely to deceive under the UCL. So it is our position that even with Capito and looking at its analysis, that likely to deceive should be and is the proper standard under the UCL fraud claim. What difference does that make? Well, at that point, then, the two issues that Lemandry addressed in our case, which was exclusive knowledge and active concealment, that consideration would not be the same. So likely to deceive, you have reasonable consumer. So we would say the facts that we have here, it should go to the jury. We have unchallenged experts. We have, including surveys, showing that 94% of consumers didn't expect heavy metals in the baby food after looking at the labels. We have the conjoint, which also shows— In an omission case, we'd still go to these other likely to deceive cases that seem to be— those cases, certainly the misrepresentation, the affirmative misrepresentation cases may take us in that direction. But in the omission case that you brought, why would likely to deceive, and how would it look different from something that resembles the Lemandry factors? Is there a duty to disclose? Is there a half-truth or failure to complete an omission? Where would we get that from? So I believe that the likely to deceive comes out of Dougherty and—excuse me— the cases that are highlighted also in the California Attorney General's amicus brief. And so there is no—the likely to deceive replaces the duty to disclose is how I understand the law. And so it's not the same inquiry. But I would—I do want to stress that even if the UCL and how Your Honor has read Capito to say that that seems to say Lemandry applies, that our claims survive Lemandry. First and foremost, defendants didn't move on Lemandry. So that was a sua sponte decision. And what we have here— But on summary judgment, we can affirm on any ground supported by the record? Of course, Your Honor. And that's why we actually briefed it in more detail in our— On Lemandry, can I ask you to provide a little more detail on what knowledge Plum has that the public couldn't know about heavy metals? What specific knowledge is at issue here in the food? So for—we state that Plum actually knew that heavy metals were in the food. Is that it? And that the ingredients were high risk. And so the omission here is that they didn't tell consumers about the presence or, you know, high risk of food. So that's the knowledge that we would have to show. So it's at that level of generality that there were heavy metals in the food and heavy metals were high risk, and the public couldn't have known either of those things? I believe your pleadings rely in part on the fact of public disclosures of exactly those facts, if that's all we're dealing with. Well, I would say, Your Honor, that it's not just exclusive knowledge. It's reasonable accessibility. And so what's going on here is, yes, there is some—there are reports, and they also cite various articles, but Plum never put on its label the inclusion of heavy metals. They never—you know, now they do on their website have the testing, but they never— Where is that requirement that—I mean, that seems to be a step beyond the cases, that if we're talking about basically that there's an affirmative labeling duty to defeat an exclusive knowledge factor in Lemandry, where does that come from? Oh, Your Honor, I'm not saying that. I just—I apologize. It's just—that's the omission, right? It's not on the label. And so once you move outside of the label—so you have Anderson v. Apple, for instance, where they talk about—you look at the nature of the product, the nature of the omission, and, you know, what information is out there. And so it is our belief that based on the district court's decision on Lemandry that she's focused solely on exclusive knowledge and public information is improper, because you have to—the other side of the— Why didn't you make allegations about the specific levels of these heavy metals in the plum products? Because just saying they exist in the products, there does seem to be ample evidence in the record that that was publicly available. But if you had information about specific levels of the metals in the products, right, that is something that then there could be more active concealment. There's more evidence of active concealment of specific levels. There would also be more evidence of specific safety hazard and whether that's unreasonable with specific levels. Well, Your Honor, I guess with food product especially, remember this is something a baby eats. And so how does a consumer know what's in that pouch as to a level if plum doesn't disclose it? And so how to get to levels? We do have allegations as to levels. We talk about their super puffs, over 100 parts per billion for organic rice. So where there was the information available from the congressional report, we do talk about levels. But none of our consumers, none of our plaintiffs can tell you or tell me what exactly was that level in the pouches they got. Did you get that in discovery? This was summary judgment, so I assume this was after some discovery. So it would just be the general testing. And plum themselves never test every, which is one thing we argue is active concealment. They didn't test every lot until I think maybe now they, no, I think they never did. They never even tested every ingredient. So we got this. I apologize. Go ahead. No, thank you for the, these are helpful answers. But to establish anything beyond what was already public knowledge, you had discovery. Did you test the products to try to specify this? I guess the problem is if we keep going back to what was already arguably public knowledge to set the standard for exclusive knowledge, that becomes a little incoherent as a rule. Yeah, and I see that concern. We did test. We had an expert of testing. We did our own testing. But again, these aren't the pouches our plaintiffs purchased and fed their babies. I mean, it doesn't matter the food product. If you say that the exclusive knowledge has to be what is the level that they purchased it, then consumers have to go test the food before they eat it. And that's, so unfortunately just they can, they may be able to allege that if tested, it would establish this. But of course, again, on summary judgment, there's the opportunity to establish something beyond. But I didn't take most of your briefing. Again, where we started with our first Q&A here was what knowledge Plum had that the public lacked. And your response was that there is heavy metals in here, and heavy metals can be harmful. And at that level, it seems like there's plenty of public information. Okay, I see that. So I want to be respectful, but I do want to just say also it's that they knew that there was high risk for heavy metals in their ingredients. They never told consumers that. They knew they didn't test by lot. They knew they didn't test final products. They knew that consumers were never told that their food has heavy metals. Even the disclosure they point to, it says may occur in food. That may occur in our baby food, may occur in baby food. It simply may occur in food. But I apologize. Let me just ask one clarification question. So your position, going back to Capito, is that the likely to deceive standard doesn't apply for CLRA claims anymore as long as you satisfy one lamentary factor there's a duty to disclose. Is that your position? Yes, I think that's. Okay, I just wanted to understand. Thank you. I'll give you time for rebuttal. Okay, thank you so much. You only have 35 seconds, but I'll give you more than that. Okay, thank you. Okay.  Good morning, Your Honors. Charles Sipos on behalf of the Appley Plum PBC. I'm pleased to be here this morning. Your Honors, the district court issued a thorough and well-reasoned opinion applying this court's precedent in Hodson. And Hodson unmistakably holds that under the UCL or CLRA, there is no duty to disclose in a pure omission case, which is what this was, unless the plaintiff shows that there is an unreasonable safety hazard. But what should we make of the fact that Capito does not mention unreasonable safety hazard or central function test, doesn't mention Wilson, doesn't mention Hodson, only does two of the lamentary factors? So how would we even know that's good law anymore? I think Capito is, Hodson still is good law post Capito for two reasons. I think it's distinguishable in two ways. First of all, Capito was decided and the conduct was deemed non-misleading because the parties were operating there under the background of an applicable statutory scheme, regulatory scheme for the disclosure of these emergency room fees. So there was an underlying regulatory requirement that the defendant was complying with that provided the defense. That's point one. Point two, I think Capito is properly characterized as a partial representation case, which is not this case because there were some fees disclosed. So I don't think Capito unwinds at all the pure omission analysis. But Capito keeps saying, I thought that they, you know, they say this Court has not defined the standard for deception by omission or failure to disclose under the UCL's fraudulent prong and we express no view here. So they're saying we understand this is an omission case. I don't see them as saying, oh, we understand this is a partial, misleading, you know, half-truth case. They say omission, right? They do, Your Honor. But I think the fact that Capito was presented with Hodson was advised by way of the AG's brief that this was the way in which pure omission cases were being decided in the federal courts and in California appellate courts, in Nalick v. Seagate, and left that holding or that body of law, I should say, undisturbed. I don't think Capito, in light of those distinguishing factors, can be read to overrule Hodson or Nalick sub salientio. And I want to make sure that this point is emphasized because Your Honor's question was correct, Judge Koh. It is not just Capito that we're dealing with. Nalick v. Seagate presented this issue as well in the petition for review very explicitly as to whether or not Hodson was the proper standard under California state law to decide an omission claim. And the petition for review was denied there. And under this Court's certification precedence, that is adequate to show that the issue is sufficiently resolved as a matter of state law. And so I think the combined force of Nalick, Capito, and Johnson & Johnson as well make it very clear that the California Supreme Court has no interest or principal disagreement with the Hodson standard. Right. But what do you make of the fact that the California Supreme Court just three months ago didn't even mention Hodson or Wilson? I think that case, Hodson or Wilson, didn't need to be addressed in Capito because of those two distinguishing factors, because it was a case that involved the applicability of a very detailed regulatory scheme. But where is that in the decision that these distinctions that you're drawing, I don't agree with the partial representation distinction because they call this an omission case. But the applicable statutory scheme, where do they say that that is the dispositive factor as to whether we need to go look at unreasonable safety hazard or central function? I don't think that's — Your Honor, you're correct that that is not addressed explicitly. But I think that is a fair inference drawn from the disposition of the case when you look at what the Supreme Court was asked to weigh in on. I mean, it was presented with the question of whether or not Hodson was the proper way to do this. And that — Hodson was not repudiated in any specific or general way. And I don't think that discussion of omissions really controls in a pure omission case under Hodson. I don't think Capito disturbs that part of California law. Well, it couldn't, could it? We don't get to do California law. Correct. We're just trying to figure out how they do California law. Correct, correct. But, again, it is not Capito standing alone. It is Capito as well as the two prior petitions for direct review that the California Supreme Court denied. I'll just get back before the LeMandry factors. On the unreasonable safety hazard, why isn't a bioaccumulation theory enough? What's wrong with that for purposes of this claim? So the record on unreasonable safety hazard, you have to look at the record in its entirety. We have admissions throughout the course of discovery by plaintiffs that these products were, in fact, safe. And the bioaccumulation theory, that was premised on the hypothetical possibility that these metals could bioaccumulate in persons with unknown consumption levels at unknown levels of the presence of heavy metals. But that goes to your question earlier about, or I think your question, Judge Koh, about levels in these foods. There was no proof whatsoever. But for lead, zero levels are safe for children. And that's according to all the federal government agencies, CDC, FDA, EPA, American Academy of Pediatrics, no level is safe. So you almost don't even need to rely on bioaccumulation for lead. So what's your response to that? If no level is safe, then why doesn't that satisfy unreasonable safety hazard? Because of the language unreasonable safety hazard. What those agencies have determined is that there is no specific level that they could set which would be deemed a safe amount of lead in foods. So no specific level. But the implication of your question is no level reasonable, unreasonable will be safe. I don't think so, Your Honor. I think the unreasonableness of the unreasonable safety hazard standard imposes a heightened and a greater degree of safety consideration beyond just conjectural or hypothetical risk, which is, I think, all that's presented here with bioaccumulation. Dr. Gardner never examined either the plaintiffs or plum products at all. And bear in mind, the entry point for these heavy metals are the crops themselves. So the Court's questions, I think, I just want to be very clear about this. The necessary implication of that holding would be that spinach is unreasonably unsafe. Carrots are unreasonably unsafe. Kale is unreasonably unsafe because of the presence of lead. And so, you know, bioaccumulation is a theory of potential future harm. If these metals accumulate over time, it increases perhaps the risk of some adverse health consequences. But there are a series of inferences in that causal chain. And none of those inferences were even looked at here. And, in fact, those inferences were disclaimed because the plaintiffs all admitted that they were unharmed. On the exclusive knowledge, moving on to the lamandry factors, who are we supposed to look to for who has reasonable access? I mean, I suppose that if you're a judge or a law clerk or an associate at a law firm, or otherwise very online, you would be aware of all of this. But why should that be enough when we're talking about consumers and these products? So, sir, Your Honor, I want to address your question directly, but I wanted to offer a point, make sure this point wasn't passed over in doing so. Under Hodgson, the lamandry factors are not considered unless and until there is a showing on either unreasonable safety hazard or central function. That's clear in Hodgson itself, where the court assumed that there was superior knowledge on behalf of the defendant, and that's reflected in Intel, in Browning, and in Eris, these court's decisions, where once that threshold was failed, once the plaintiff failed to demonstrate unreasonable safety hazard or central function, you don't even look to lamandry. Sure, but assume that we want to play it safe with respect to the State of California consumer protection law. Understood. So under active concealment, what you look at is what are the matters complained of. And here the matter complained of was the presence of heavy metals. Well, I'm sorry. I'm talking — I thought I was exclusive knowledge rather. Those are two different factors. Sure, sure. Okay. So for exclusive knowledge, Your Honor, I think it just merely has to be the case that the evidence is present or the information is present in some public fashion. I mean, if you look at the record here, it was not only on Plum's own website, but it was in a series of public reports dating back to 2017. And so I think you're not considering — it's not an analysis of what's the level of penetration of this information among consumers. You're looking at is this information publicly available to someone if they want to look for it. And here that was — Free notice somewhere out there in the great big world. Your Honor, I think that's right. As long as the information is reasonably accessible and publicly available information is reasonably accessible, I think those two concepts are coextensive. And to hold it — to change it to a heightened standard, I think, would push the standard to actual knowledge on behalf of the plaintiff, which is clearly not the case. I mean, if there has to be some showing that the plaintiff knew, then that test collapses on itself. I think so long as the information is publicly available and reasonably accessible online or through other forms of public reports, then the exclusive knowledge standard isn't met. But bear in mind that exclusive knowledge, and this is — I think in the Uber case makes this clear, it's a two-pronged standard. You have to show — the plaintiffs have to show that that defendant was in sole possession of the information and that the information wasn't reasonably accessible. And here under exclusive knowledge, you fail at both steps because the record was likewise very clear that the presence or risk of presence of heavy metals was not something exclusively in Plum's knowledge. Not at all. Let me ask you a question. For the central function test, you say, well, it has to be completely unusable as food. And if you have that test, then it completely renders superfluous the next test, which is, is the defect material. So you're basically eliminating the second part of the Hudson test. Your Honor, I — Right? Because then what's the materiality if you've already said it has to be completely rendered unusable as food to satisfy the central function test? Well, Your Honor, I think in a case where the central function — I think those two inquiries do, I think, collapse on each other. But they're not supposed to, right? Under Hudson, they are separate tests. If you affect the central function, then is that defect material? That's supposed to be a second step. But you're collapsing those two, right? Okay. I'm following, I think, now, Your Honor. I think there could be a case in which the matter complained of wouldn't — you know, might be immaterial and the analysis might stop there. So, for example, a food case in which there is — But what authority says these two steps don't always have to be applied? It just depends on the context, and you can figure it out when it applies and when it doesn't. I don't think that's consistent with how Hudson supports the test, right? Well, here, Your Honor, to be clear, here we're not challenging materiality. I mean, I think materiality can be shown by —  But what I'm saying is you're saying at the central function test it has to be incapable of being used as food. And if that's the test for central function, then what is the defect material test? What work is that doing at all? Your Honor, I think materiality still is a gatekeeping function. I mean, if plaintiffs had no evidence that anyone was interested in the issue of heavy metals, they would fail on materiality as well. And here we're not, for purposes of the appeal, we're not contesting materiality. I mean, there was some evidence in the record that this information was material to some consumers. But the point is that's not enough under Hodson. I mean, you have to show both materiality and that the central function was impaired. So I don't think there's — on this record, I don't think materiality makes a difference. I mean, they had evidence of materiality, but where the analysis failed was on central function. So this is a case where there was a distinction in the proof between materiality and central function. And there might be a case where the theory is so attenuated that you wouldn't even be able to establish bare materiality. I want to ask you a question on active concealment. You just said earlier that Johnson & Johnson is still good law, in your view. And in Johnson & Johnson, playing down health risk of these pelvic mesh products was deemed active concealment. And if we look at the House report, which repeatedly says Plum concealed this, Plum concealed that, and then you downplay the information on your website, how is that not comparable to active concealment found in Johnson & Johnson? And even if it doesn't constitute active concealment, how does that not establish a genuine issue of material fact, such that plaintiffs should have survived summary judgment? Because, Your Honor, the matters complained of were the presence of heavy metals at any level or the risk of heavy metals. Their theory was not that when heavy metals are present at some threshold, then the deception accrues or then liability accrues. It was simply that is there heavy metals present or the risk of that presence? And if you look at the website statement, there is no denial. There is repeated affirmance of the fact that heavy metals are present in these foods, that they're present at levels typical for comparable foods, and that if you buy any food with one of these underlying crops, heavy metals are going to be present there. So I don't think there is a downplaying of the issue actually challenged, which is, is there some risk that heavy metals will be in these foods? That was openly admitted to because it is an omnipresent issue in the food supply when you're talking about these crops. Do you have any more questions? All right. You've gone a minute over your time, so we don't have any more questions for you. Thank you. Thank you, Your Honor. All right. I'll give you two minutes for rebuttal. All right. Thank you, Your Honors. Just to go back to the exclusive knowledge, as we addressed in our briefing, we believe it's superior knowledge and reasonable accessibility, and I believe the question that was asked of my colleague on the other side of the v as to who is the audience that the court considers as to reasonable accessibility, and that's the reasonable consumer, and that's usually a question of fact. And with the record here, we have disputed facts as to whether it was reasonably accessible based on plaintiff's testimony, our survey, which they did not challenge. Ninety-five percent of consumers did not know. The congressional report itself said that they were selling baby food with heavy metals to unsuspecting consumers. And in Anderson v. Apple, it highlights how you have to look at what is the product. This is a baby food product they buy at a grocery store. It's not something you would spend months and months investigating online. I thought 35 percent of the survey respondents in your survey were aware of the congressional report. That was just a question we asked after the congressional report came out. But the congressional report is what — Well, they couldn't have known it before the congressional report came out, right? I apologize. But that cannot be shown for knowledge in this case because that is what actually informed all of our plaintiffs. And this was at summary judgment. So this is their individual claims. And none of them bought after the congressional report. So to use a post-dated report to show knowledge goes against what the record shows. And then as to unreasonableness of the safety risk, we believe, you know, Hudson — Clear as safety risk, you don't even get into unreasonable. But here we had — Why would you not get into unreasonable? That is Hudson's test, right? I think Hudson quoted Mars as too unreasonable. But when they finally do the holding, they just say safety risk. But either way, based on the facts here, that should have gone to the jury of the disputed facts. Because unreasonableness is a question of would a reasonable consumer think accumulation of heavy metals in baby food that could have been prevented or mitigated by plum an unreasonable risk? We have facts here that show that they would. And that should have been a question for the jury. And the same with central function. We had enough evidence to go to the jury. I see I'm over time. So I would like to thank the court for the opportunity to argue today. And thank you. All right. Thank you to both counsel. These were very helpful arguments. And we're adjourned.
judges: HURWITZ, KOH, JOHNSTONE